1  G. Thomas Martin, III, Esq. (SBN 218456)
2  Nicholas J. Bontrager, Esq. (SBN 252114)
   **MARTIN & BONTRAGER, APC**
3  4605 Lankershim Blvd., Suite 535
   Toluca Lake, CA 91602
4  Telephone: 323.940.1700
5  Facsimile: 323.328.8095
   tom@mblawapc.com
6  nick@mblawapc.com

8  Asaf Agazanof, Esq.  (SBN 285043)
   Asaf@Lawasaf.com
9  **ASAF LAW APC**
   2330 Westwood Blvd., Second Floor
10 Los Angeles, CA  90064
11 Tel: (424) 254-8870
   Fax: (888) 254-0651
12 Attorneys for Plaintiff,
13 SANDY TORREZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| SANDY TORREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INFINITY INSURANCE COMPANY and KEMPER CORPORATION,<br><br>Defendant. | Case No.: 2:22-cv-5171<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**(1) Violation of California Business and Professions Code § 17200** *et seq.*<br><br>**(2) Unjust Enrichment** |
|---|---|

CLASS ACTION COMPLAINT

Plaintiff Sandy Torrez ("Plaintiff"), by and through her attorneys and on behalf of herself and all others similarly situated, hereby submits this Class Action Complaint against Defendants Infinity Insurance Company ("Infinity") and Kemper Corporation ("Kemper") (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1. This case is filed to end Defendants' practice of unfairly profiting from the global COVID-19 pandemic.

2. Beginning in March 2020, states across the country, including California, began to enforce strict social distancing measures to slow the spread of COVID-19. This included closing schools and businesses and instituting strict "stay-at-home" orders that prevented most individuals from leaving their homes for extended periods of time.

3. While many companies, industries, and individuals have suffered financially as a result of the COVID-19 pandemic, auto insurers like Infinity have scored a windfall. Not surprisingly, as a result of state-wide social distancing and stay-at-home measures, there has been a dramatic reduction in driving, and an attendant reduction in driving-related accidents. This decrease in driving and accidents has significantly reduced the number of claims that auto insurers like Defendants have paid, resulting in a drastic and unfair increase in Defendants' profits at the expense of their customers.

4. One published report calculates, very conservatively, that at least a 30% average refund of paid premiums would be required to make up for the excess amounts paid by consumers for just the period between mid-March and the end of April of 2020.

5. Despite full knowledge of these facts, Defendants continued to charge and collect excessive premiums throughout 2020 and 2021 and have failed to issue adequate refunds. Defendants' refund program was inadequate to compensate its customers for overpayments resulting from COVID-19. The program gave only a 15% refund to auto insurance policyholders in April and May of 2020 and only an additional 5% for June 2020.

6. As a result, Defendants scored a windfall of more than $100 million in surplus earned premiums compared to 2019, even after accounting for the premium relief they provided to policyholders.

7. To remedy Defendants' unlawful conduct, Plaintiff brings this class action alleging violations of California state law. Plaintiff seeks disgorgement of the ill-gotten gains obtained by Defendants to the detriment of their customers, all available damages, punitive damages, declaratory and injunctive relief, and all other available relief.

## JURISDICTION

8. This Court has jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the amount in controversy is over $5,000,000 exclusive of interest and costs, and at least one member of the class is a citizen of a State different from Defendants.

## VENUE

9. Venue is proper in the Central District of California under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

10. Defendant Kemper Corporation is an Illinois corporation with a principal place of business in Chicago, Illinois. Through its subsidiaries, including Infinity Insurance Company, Kemper sells personal automobile and other types of insurance in states around the country, including California.

11. Defendant Infinity Insurance Company is a wholly owned subsidiary of Kemper Corporation with its principal place of business in Birmingham, Alabama. Infinity was acquired by Kemper in July 2018. Infinity sells personal automobile insurance in states around the country, including California. Infinity issued auto insurance policies to Plaintiff and the members of the putative class during the time period at issue.

12. Plaintiff Sandy Torrez is an adult resident of Inglewood, California. Plaintiff has held a personal auto insurance policy purchased from Infinity during the time period relevant to this lawsuit. As described in more detail herein, as a result of the global COVID-19 pandemic and corresponding drop in automobile use and traffic, the premium

credit given by Defendants is wholly inadequate to compensate Plaintiff for her overpayments on this policy.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.   The Global COVID-19 Pandemic and State-Mandated Social Distancing Measures**

13.   In late December 2019, a novel coronavirus known as SARS-CoV-2 began to spread around the globe. The virus causes a disease called COVID-19. By mid-January, cases of COVID-19 were confirmed in the United States.

14.   By mid-March, there were thousands of confirmed cases of COVID-19 across the United States and hundreds in the State of California alone.

15.   Like many states around the country, California responded to the worsening COVID-19 crisis with measures designed to increase, and often mandate, social distancing in order to slow the spread of the virus.

16.   On March 4, 2020, Governor Gavin Newsom proclaimed a State of Emergency in California as a result of COVID-19. In the following weeks, the state rolled out a series of social distancing measures, including, for example, recommendations that older adults and those with elevated risk should self-isolate.

17.   On March 19, 2020, Governor Newsom instituted a statewide stay-at-home order,[1] making California among the first states to establish such an order. With some exceptions, the order mandated "all individuals living in the State of California to stay home."[2]

18.   In the time since Governor Newsom first instituted the stay-at-home order, California's progress toward reopening has been halting, and additional stay-at-home orders were imposed in response to the spread of COVID cases.

///

---

[1] Executive Order N-33-20 (Mar. 19, 2020), https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.
[2] *Id.* ¶ 1.

B.  **Defendants Obtained a Windfall Due to the Dramatic Decrease in Automobile Use and Traffic Caused by COVID-19**

19. Although businesses across the United States have almost uniformly suffered as a result of COVID-19, state-wide stay-at-home orders, and other social distancing measures, the auto insurance industry has benefited. In fact, auto insurance—a $250 billion industry— has secured a windfall from COVID-19-related restrictions. The reason is simple. As one report put it: "With shelter-in-place restrictions and business closings, most people stopped driving or reduced their driving dramatically. With fewer cars on the road, there were dramatically fewer accidents. Fewer motor vehicle accidents mean fewer auto insurance claims."[3]

20. Beginning in mid-March of 2020, the number of miles driven by individuals dropped dramatically because of COVID-19. This includes the State of California. Through the use of cell phone location data, it has been reported that vehicle miles traveled in California dropped significantly from their January 2020 average in March and April of 2020:[4]

| Date Range | Decrease in Miles Traveled |
|---|---|
| March 15 - March 21 | -53% |
| March 22 - March 28 | -72% |
| March 29 - April 4 | -74% |
| April 5 - April 11 | -77% |
| April 12 - April 18 | -74% |
| April 19 - April 25 | -71% |

---

[3] *See* Center for Economic Justice & Consumer Federation of America, Personal Auto Insurance Premium Relief in the COVID-19 Era at 5 (May 7, 2020) ("CEJ/CFA Report"), https://consumerfed.org/wp-content/uploads/2020/05/Auto-Insurance-Refunds-COVID-19-Update-Report-5-7-20.pdf.
[4] *See id.* at 6-8.

Upon information and belief, decreases in pre-COVID miles traveled continued through the end of 2020 and well into 2021.[5]

21. Automobile accidents also decreased. According to the Road Ecology Center at the University of California, Davis, traffic collisions, including those involving injuries or fatalities, dropped by roughly half after California instituted its stay-at-home order.[6]

22. This dramatic decrease in driving and auto accidents allowed auto insurance companies, including Defendants, to unfairly profit at the expense of their customers during the COVID-19 pandemic. Auto insurance rates, including those set by Defendants, are intended to cover the claims and expenses that they expect to occur in the future, extrapolated from historical data. Thus, as explained in the joint report by the Center for Economic Justice and the Consumer Federation of America:

> Because of COVID-19 restrictions, the assumptions about future claims underlying insurers' rates in effect on March 1 became radically incorrect overnight. When roads emptied, the frequency of motor vehicle accidents and insurance claims dropped dramatically and immediately. The assumptions in insurers' rates covering time-frames from mid-March forward about future frequency of claims became significantly wrong when the roads emptied because of Stay-At-Home orders and business closures starting in mid-March. The then-current rates became excessive not just for new policyholders going forward, but also for existing policyholders whose premium was based on now-overstated expectation about insurance claims.[7]

23. The excessive premiums collected and not refunded by Defendants during the COVID-19 pandemic have led to a substantial windfall.

///

///

---

[5] *See id.* at 2; *see also* Center for Economic Justice & Consumer Federation of America, Auto Insurance Refunds Needed as New Data Show Crashes Remain Well Below Normal Due to Pandemic (Dec. 22, 2020), https://consumerfed.org/press_release/auto-insurance-refunds-needed-as-new-data-show-crashes-remain-well-below-normal-due-to-pandemic-23-fewer-accidents-in-september-and-october/.

[6] Fraser Shilling and David Waetjen, *Special Report: Impact of COVID19 Mitigation on Numbers and Costs of California Traffic Crashes*, Road Ecology Center, UC Davis, Apr. 1, 2020 (updated Apr. 15, 2020), https://roadecology.ucdavis.edu/sites/g/files/dgvnsk8611/files/files/COVID_CHIPs_Impacts_report2.pdf.

[7] CEJ/CFA Report, *supra*, at 4.

C.  **Defendants Have Failed to Give Adequate Refunds to Plaintiff and Other Policyholders in California**

24.  According to conservative calculations by the Center for Economic Justice and the Consumer Federation of America based on motor vehicle accident data, at least a 30% minimum average premium refund to consumers would be required to correct the unfair windfall to auto insurance companies, including Defendants, just for the time period from mid-March through the end of April 2020.[8]

25.  At all relevant times, Defendants have been aware of the need to refund premiums in order to correct the unfair windfall it gained from policyholders in California as a result of the COVID-19 crisis. Defendants have likewise been aware of their excessive profits. Despite this, Defendants have failed to adequately return these profits to their customers.

26.  In spring 2020, Defendants provided a 15% premium credit to personal auto insurance customers for the months of March and April 2020.[9] The company reports that it subsequently provided additional, but even smaller, refunds of 5% of premium to California customers for June 2020.

27.  But Defendants' credits were inadequate to compensate their customers for the unfair windfall that they obtained as a result of COVID-19. The credits were nowhere near the minimum 30% average refund benchmark that has been conservatively estimated as an adequate refund for just the first the first two months of the pandemic alone.

28.  As a result of these unfair business practices, Defendants scored a windfall. While consumers were suffering from economic turmoil from the pandemic, Kemper

---

[8] CEJ/CFA Report, *supra*, at 12-13.

[9] Defendants extended the premium credit because, per an April 2020 statement by Kemper's president and CEO, Joseph P. Lacher, "policyholders have committed to practice social distancing and are driving less, and that deserves recognition through financial relief[.]" "Kemper Announces Premium Relief to Policyholders and Support to Communities Amid COVID-19 Pandemic," BUSINESSWIRE (April 10, 2020), https://www.businesswire.com/news/home/20200410005055/en/Kemper-Announces-Premium-Relief-to-Policyholders-and-Support-to-Communities-Amid-COVID-19-Pandemic.

reported that its specialty auto insurance business "produced excellent results in 2020" because of "pandemic-related frequency benefits." Specifically, Kemper disclosed that even after adjusting for the premium credits it provided to auto insurance customers its "earned premiums increased 10%" which amounted to a more than $100 million surplus compared to 2019.[10]

29.     Plaintiff has been a customer of Defendants since 2018. In fall 2019, Plaintiff purchased an auto insurance policy from Infinity for the six-month period beginning on June 18, 2019 and ending on June 18, 2020. Plaintiff subsequently renewed her annual policy in 2021, and remains a current policyholder with Defendants.

30.     Plaintiff received refunds and/or premium credits in 2020. These refunds were inadequate to compensate Plaintiff for the unfair windfall that Defendants have obtained as a result of COVID-19.

31.     Plaintiff's policy described above was in effect during the time period in which most of the United States, including California, was significantly impacted by the global COVID-19 pandemic and stay-at-home orders (along with other measures and conditions) caused by a widespread and dramatic decrease in automobile use and traffic. Despite this, Defendants gave Plaintiff inadequate credits on her 2020 and 2021 premiums.

32.     Defendants were aware that the shelter-in-place orders, social distancing guidelines, and resulting reduction in driving resulted in premiums that were not based on an accurate assessment of risk. Yet Defendants continued to collect and retain excessive, unfair premiums from Plaintiff and others.

33.     In 1988, California voters approved Proposition 103 to further establish the public policy of the state and to "protect consumers from arbitrary insurance . . . practices, to encourage a competitive insurance marketplace . . . and to ensure that insurance is fair, available, and affordable to all Californians." The people of the state declared with

---

[10] *Kemper Corporation 2020 Annual Report* at 3, 38, https://s25.q4cdn.com/858298823/files/doc_financials/2020/ar/Kemper-Corporation-2020-Annual-Report.pdf.

Proposition 103 that "[t]his law shall be liberally construed and applied in order to fully promote its underlying purposes . . . ."

34. Defendants' collection and/or retention of such excessive premiums violates California public policy and contravenes Proposition 103's mandate to protect consumers from arbitrary insurance practices, to encourage a competitive insurance marketplace, and to ensure that insurance is fair, available, and affordable for all Californians.

35. Upon information and belief, thousands of other policyholders in California have been injured by Defendants' policy and practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic.

36. Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of Defendants.

## CLASS ACTION ALLEGATIONS

37. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings this action individually and on behalf of all similarly situated individuals.

38. The proposed class is defined as follows: All California residents who purchased personal automobile insurance from Defendants covering any portion of the time period from March 1, 2020 to the present.

39. The members of the class are so numerous that joinder of all members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, there are thousands of individuals in the class. The identities of the class members can be determined from Defendants' records.

40. There are questions of law and fact common to the class that predominate over questions solely affecting individual members.

41. The common questions of law and fact include, but are not limited to:
   a. Whether Defendants had a common policy or practice of failing to provide adequate refunds to policyholders due to the COVID-19 pandemic;
   b. Whether Defendants' premium relief was inadequate;

  c. Whether Defendants were unjustly enriched as a result of their failure to provide adequate refunds to their customers;

  d. Whether Defendants' failure to provide adequate refunds to its customers is unfair;

  e. Whether Defendants violated California consumer protection laws through their failure to provide adequate refunds to their customers and their failure to disclose the inadequacy of their refunds; and

  f. the proper measure and calculation of damages.

42. The questions of law and fact listed above will yield common answers for Plaintiff and the class as to whether Defendants are liable for the alleged legal violations.

43. Plaintiff's claims are typical of those of the members of the class. Plaintiff, like other class members, was subject to the unlawful practices described herein.

44. Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

45. Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

46. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There will be no difficulties in managing this action.

47. In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of judicial economy.

# CAUSES OF ACTION

## COUNT I

**Violation the California Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

**(On Behalf of Plaintiff and the Putative Class)**

48. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

49. Plaintiff and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

50. The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

51. By committing the acts and practices alleged herein, Defendants have engaged in unfair business acts and practices in violation of the UCL.

52. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims. Defendants have violated the UCL's proscription against unfair business practices by, among other things: failing to fully refund premiums with full knowledge of the amount and extent of their excess and the fact that they are not based on an accurate assessment of risk, and failing to disclose the fact that they were earning excessive profits, or the amount of those profits.

53. There is no societal benefit from Defendants' conduct—only harm to consumers. Defendants have engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

54. California has a longstanding public policy limiting an insurer's ability to impose rates in excess of a fair rate of return on the insured risk that is reflected in various statutes and regulations.

55. Defendants' conduct in collecting and retaining premiums that have become excessive in light of the unforeseen pandemic-related reduction in driving violates this vital public policy and the intent of the statutes and regulations designed to ensure that the rates collected by insurers relate to the risk insured and are limited to a fair rate of return.

56. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

57. The injury caused by Defendants' failure to provide adequate refunds is substantial in light of very conservative calculations that a 30% minimum average premium refund would be required to correct its unfair windfall just for the time period from mid-March through the end of April 2020.

58. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defendants' conduct in violation of the UCL. Plaintiff and the members of the putative class lost money or property and suffered injury in fact because Defendants collected and retained, and continues to collect and retain, premiums in excess of the limitations imposed by California public policy, which rightfully belong to Plaintiff and the putative class.

59. Plaintiff and the members of the putative class were unable to reasonably avoid these harms because the analysis required to determine premium refunds was within the exclusive knowledge of Defendants.

60. Plaintiff therefore requests that this Court grant the relief enumerated below. Otherwise, Plaintiff and the members of the putative class may be irreparably harmed and/or denied an effective and complete remedy.

## COUNT II

### Unjust Enrichment/Quasi-Contract

### (On Behalf of Plaintiff and the Putative Class)

61. Plaintiff pleads this Count in the alternative to her other Counts herein.

62. As a result of Defendants' failure to provide adequate refunds to auto insurance customers as described herein, Defendants have been unjustly enriched.

CLASS ACTION COMPLAINT

63. Defendants were enriched under such circumstances that they cannot conscientiously retain their gain at Plaintiff's and the putative class's expense.

64. Plaintiff and the members of the putative class have been injured as a direct and proximate result of Defendants' unlawful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the putative class, prays for relief as follows:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B. The appointment of Plaintiff as class representative and her counsel as class counsel;

C. A declaration that the practices complained of herein are unlawful and violate the laws of California alleged herein;

D. An injunction against Defendants from engaging in the unlawful practices complained of herein;

E. Awarding Plaintiff and the members of the putative class their damages in an amount to be determined at trial, including compensatory damages, consequential damages, punitive damages, and any other damages provided under relevant laws;

F. Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendants from their unjust enrichment;

G. An order awarding Plaintiff and the class attorneys' fees, costs, and expert costs;

H. An order awarding Plaintiff and the members of the putative class pre-judgment and post-judgment interest, as allowed by law; and

I. Such further relief as may be appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

CLASS ACTION COMPLAINT

Dated: July 26, 2022 By: */s/ G. Thomas Martin, III*

G. Thomas Martin, III (CA SBN: 218456)
tom@mblawapc.com
**MARTIN & BONTRAGER, APC**
4605 Lankershim Blvd., Suite 535
Toluca Lake, CA 91602
Telephone: (323) 940-1700 X101
Facsimile: (323) 238-8095

Asaf Agazanof, Esq.
Asaf@Lawasaf.com
**ASAF LAW APC**
2330 Westwood Blvd., Second Floor
Los Angeles, CA  90064
Tel: (424) 254-8870
Fax: (888) 254-0651

Matthew H. Morgan*
morgan@nka.com
Robert L. Schug (CA SBN: 249640)
schug@nka.com
Chloe A. Raimey
craimey@nka.com
**NICHOLS KASTER, PLLP**
4700 IDS Center
80 S. 8th Street
Minneapolis, MN, 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

Ryan F. Stephan*
rstephan@stephanzouras.com
James B. Zouras*
jzouras@stephanzouras.com
Teresa M. Becvar*
tbecvar@stephanzouras.com
Paige L. Smith*
psmith@stephanzouras.com
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
Facsimile: (312) 233-1560

14

CLASS ACTION COMPLAINT

David A. Neiman*
dneiman@rblaw.net
**ROMANUCCI & BLANDIN LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Telephone: (312) 458-1000
Facsimile: (312) 458-1004

Manfred P. Muecke (SBN: 222893)
mmuecke@manfredapc.com
**MANFRED, APC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Fax: (619) 550-4006

*Pro hac vice application forthcoming*

Attorneys for Sandy Torrez and the putative class.